IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WENDY LEE SPICER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:08CV357-SRW |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**Background**

In an application for Title II benefits filed on June 29, 2005, plaintiff Wendy Lee Spicer asserted that her ability to work is limited by fibromyalgia, chronic fatigue and degenerative disk disease. (R. 57). Plaintiff appeals the decision of the ALJ, rendered on August 24, 2007, after an administrative hearing. The ALJ found that, while plaintiff has "severe" impairments of "history of fibromyalgia versus chronic fatigue syndrome, mild degenerative disc disease of the lower back, cervical tension headaches, and adjustment disorder with depression," she is not disabled within the meaning of the Act.[1] The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

---

[1] The Appeals Council denied review on April 21, 2008. (R. 1F).

**Discussion**

In reviewing the Commissioner's decision, the court must uphold factual findings that are supported by substantial evidence. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the ALJ has conducted the proper legal analysis, the ALJ's decision must be reversed. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

In this case, the ALJ failed to apply the proper legal standard to his consideration of "opinions and other evidence from sources who are not 'acceptable medical sources' in disability claims." SSR 06-03p. In contravention of the Commissioner's regulations and binding rulings, the ALJ: (1) treated the opinion of disability examiner Carra Wright as an expert medical opinion, although Wright is not a medical source; and (2) stated a legally insufficient reason for rejecting the observations of plaintiff's supervisor – *i.e.*, that her "lay statement . . . cannot be a substitute for, or tantamount to, appropriate medical opinions."

In Social Security Ruling 06-03p – cited by the ALJ – the Commissioner "clarifies how [adjudicators] consider opinions and other evidence from medical sources who are not 'acceptable medical sources' and from 'non-medical sources,' such as teachers, school counselors, social workers, and others who have seen the individual in their professional capacity, as well as evidence from employers, spouses, relatives, and friends." SSR 06-03p,

2006 WL 2329939 at *4.  The ruling reiterates that "only 'acceptable medical sources' can give us medical opinions."  Id. at * 2 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  The Ruling further explains that "[i]n considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."  Id. at 6; see also 20 C.F.R. 404.1513(d)(4)(in addition to evidence from acceptable medical sources, adjudicators "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work").

    The ALJ's treatment of supervisor's statement.  Plaintiff contends that the ALJ's decision to give the statement from her former supervisor "little or no weight" was erroneous in that "at least Ms. Ellis actually had the opportunity to observe Ms. Spicer's functioning[.]" (Doc. # 12, pp. 15-16).  Plaintiff started work at Kelley Place, a specialty care assisted living facility, on May 25, 2004, initially as a nursing assistant.  (R. 79, 86, 88).  Her supervisor, Twyler Ellis, completed an employer questionnaire for DDS on August 9, 2005. (Exhibit 6E).  Ellis indicated that plaintiff was always on time and her attendance was satisfactory.  Ellis wrote that, "[i]n the past few months, employee has had to decrease work hours due to swelling of arms [and] legs." (R. 88).  She further indicated that plaintiff required frequent breaks and that "swelling is visible within the extremities." (Id.).  Ellis concluded:

> As a nurse, I have observed employee with visible swelling.  I have let employee leave work early to go to see doctor for the increase in pain +

> swelling. Employee can not, physic[]ally, hold out to take care of residents. I have moved employee into a desk-type job but employee still continues to suffer from pain + swelling. I have noticed in the past few months it takes employee longer to do assigned tasks, whether it is physic[]al or not.

(R. 89-90). In rejecting Ellis' statement, the ALJ wrote:

> The lay statement submitted by the claimant's former supervisor (Exhibit 6-E) was considered but can be given little or no weight *as it cannot be a substitute for, or tantamount to, appropriate medical opinions*. (SSR 06-3-p).

(R. 27).

The ALJ provided no further analysis or reason for giving Ellis' statement "little or no weight." The problem with his stated rationale is that it applies with equal force to every "lay statement."[2] Even though lay statements are not substitutes for or equivalent to "appropriate medical opinions," the Commissioner's regulations provide that they are "evidence" (20 C.F.R. § 404.1512(b)(3),(4)),[3] which may be used "to show the severity of [a claimant's] impairment(s) and how it affects [her] ability to work" (20 C.F.R. § 404.1513(d), (d)(4)). Social Security Ruling 06-03p makes clear that the ALJ must "consider all relevant evidence in an individual's case record," and that evidence from non-

---

[2] Social Security Ruling 06-03p lists factors pertinent to analyzing evidence from medical sources who are not "acceptable medical sources" as defined by the regulation and evidence from non-medical sources who have seen the claimant in their professional capacities. As to both of these categories, it is clear that the Ruling contemplates that the sources have observed or evaluated the claimant in the context of providing professional services of some kind to the claimant. The other type of source addressed by the Ruling is "'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors." SSR 06-03p, 2006 WL 2329939 at *6. Although Ellis is a nurse, plaintiff was not her patient. Ellis is not a "medical source" for purposes of plaintiff's claim for benefits, and she did not see plaintiff in her professional capacity as a nurse. Rather, their relationship was that of supervisor and employee.

[3] The Commissioner's recent amendments to the regulations, including 20 C.F.R. § 404.1512 and § 404.1527, implemented at 75 FR 62676-01, are not effective until November 12, 2010.

4

medical sources should be evaluated in view of factors including the nature and extent of the relationship, whether it is consistent with other evidence, and any other relevant factors. SSR 06-03p. In short, the ALJ is not required to accept evidence from a "non-medical source" as true, but he may not reject it solely because it is not "tantamount to" or "a substitute for" an opinion from a medical source.[4]

<u>The ALJ's treatment of Wright's opinion</u>. Carra Wright is the "disability examiner" (<u>see</u> R. 30, 77) or "disability specialist" (<u>see</u> R. 102) who processed plaintiff's claim for the Disability Determination Services. In reaching his finding regarding plaintiff's residual functional capacity, the ALJ treated Wright as a "medical source." He wrote:

> The undersigned observes that there have been **no examining or treating medical source opinions of record**. Therefore, *the specialized State agency medical source statements have been considered the most probative for purposes of establishing the residual functional capacity herein (Exhibits 12-F and 13-F).* These conclusions have been supported by Exhibits 9-F (mental) and 10-F (physical) as noted and discussed above.

(R. 20)(emphasis in bold type in original; emphasis in italics added). Exhibit 12-F is a physical RFC assessment form completed by Wright.[5,6]

---

[4] The court does not suggest that the ALJ was required to consider or credit Ellis' *opinion* that plaintiff lacks the physical capacity to care for patients. However, Ellis' statement also included personal observations of plaintiff's work, the reduction in her productivity over the preceding few months, and swelling in her extremities.

[5] The ALJ apparently meant to refer to Exhibits 11F (mental RFC form completed by state agency psychologist and 12F (physical RFC form completed by disability examiner Wright), and to Exhibits 8-F (consultative psychological examination by Dr. George) and 9-F (consultative physical examination by Dr. Ellis).

[6] The ALJ indicates that Dr. Ellis' consultative examination results support Wright's "medical source statement." In the report of the consultative physical examination he conducted in September 2005, Dr. Ellis does not – as observed by the ALJ – translate his findings into an RFC assessment. Although the results of his clinical examination were essentially normal, except for plaintiff's complaints of tenderness

In a supplemental brief, the Commissioner characterizes the ALJ's reference to Wright as a "specialized State agency medical source" as an "opinion-writing deficiency." The Commissioner argues, based on the ALJ's earlier reference to Wright as a "reviewer," that "the ALJ understood that Ms. Wright was not a medical source but instead was merely a State agency reviewer." (Supplemental brief, p. 2). The court cannot agree. First, the ALJ referred to psychologist Leonard as a "State agency psychological reviewer" and to Wright as a "state agency reviewer." (R. 20). He later referred to both `as "reviewers employed by the State agency." (R. 27). Dr. Leonard is an expert whose opinion *must* be considered by the ALJ; Wright is a disability examiner whose "medical" opinion *may not* be considered. See 20 C.F.R. § 1527; SSR 96-6p; SSR 06-03p, 2006 WL 2329939 at *2 ("only 'acceptable medical sources' can give us medical opinions")(citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)); see also POMS DI 24510.050 (physical RFC forms completed by the single decision-maker ("SDM") "are not opinion evidence at the appeal levels"). Thus, the ALJ's use of the word "reviewer" to describe both does not suggest that the ALJ understood that Wright was not a medical source.

Additionally, the ALJ indicated that he found Wright's "specialized State agency medical source statement[]" to be "most probative" of the plaintiff's physical RFC *because*

---

to palpation and upon supine straight leg elevation to 30 degrees, Dr. Ellis' diagnostic impressions were fibromyalgia and "[m]ultiple other syndromes such as chronic pain and chronic fatigue syndrome." (Exhibit 9-F). In opposing plaintiff's suggestion that the ALJ should have either re-contacted her treating physician or ordered another consultative examination (plaintiff's brief, pp. 12-13), the Commissioner argued, incorrectly, that Dr. Ellis' consultative examination occurred in September *2006* and that there was no substantial change in the evidence since that time. (Commissioner's initial brief, pp. 12-13). The examination took place in 2005, three months after plaintiff's alleged onset date. (Exhibit 9-F).

there were no opinions from examining or treating medical sources.  (R. 23).  The ALJ later stated:

> The *residual functional capacity conclusions reached by the reviewers employed by the State agency* also supported a finding of 'not disabled.' (Exhibit 9-E).  *Although those reviewers were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians*, those opinions do deserve appropriate weight in a case, such as this, where a similar supportive conclusion of nondisability was reached.

(R. 27)(emphasis added). The ALJ's reference to Wright as "nonexamining" in this paragraph clearly implies that he believed her to be a medical source.  Additionally, Exhibit 9E (referenced by the ALJ in the quoted paragraph above) is the vocational rationale form completed by Wright on September 27, 2005, in which she concludes that "the limitations outlined in RFC/MRFC dated 9/27/2005 [*i.e.*, the RFC form she herself completed that same day (Exhibit 12F) and, possibly, the mental RFC form completed a week earlier by Dr. Leonard (Exhibit 11F)] are consistent with the physical/mental requirements of the claimant's past relevant work as a: cutting/measurer . . . as the job is usually performed in the national economy."  (R. 102).  The ALJ's analysis here is questionable, anyway, as he appears to reason that the RFC conclusions reached by the "reviewers" are entitled to "appropriate" weight simply because the disability examiner also concluded that plaintiff was not disabled.  If the ALJ knew that the "reviewer" and the disability examiner were one and the same, as argued by the Commissioner, the analysis is nonsensical – *i.e.*, the conclusion that Wright's RFC assessment is entitled to "appropriate" weight, even though she is "non-examining," because Wright also reached "a similar supportive conclusion of nondisability."

The court finds without merit the Commissioner's contention that the ALJ knew that the physical RFC assessment was not provided by a medical source and that his characterization of the assessment as that of a "specialized State agency medical source" was merely an "opinion-writing deficiency."

The Commissioner next argues that, even if the ALJ considered Wright's opinion as a medical source opinion, plaintiff has failed to demonstrate that the error was harmful and the ALJ's decision is supported by substantial evidence. However, plaintiff argues that the ALJ erred by giving little or no weight to the statement of her supervisor (who actually observed her functioning) while deferring to Wright's opinion. (Plaintiff's brief, pp. 15-16). The ALJ found the opinion of a disability examiner to be "most probative" because he thought it was a medical source opinion; he gave the statement of plaintiff's supervisor "little or no weight" solely because it was not a "substitute for" or "tantamount to" a medical source opinion. The court cannot conclude that the ALJ's error in applying the appropriate legal standards to the evidence before him was harmless. The Commissioner's decision is, accordingly, due to be reversed.

## The Administrative Record

By order entered on August 17, 2010 (Doc. # 20), the court noted that medical records submitted to the Appeals Council by plaintiff's counsel on October 22, 2007 with plaintiff's request for review (see R. 1E, 4-9), and records of plaintiff's treatment by Dr. Evans on three specific dates in January and May 2005 which were referenced by the ALJ in his decision, were not included in the administrative transcript that the Commissioner filed with the court.

The court directed the Commissioner to file "the entire administrative transcript," with a certification that the record is complete.  On August 25, 2010, the Commissioner filed a "supplemental certification" with the January and May 2005 treatment records from Dr. Evans, certifying only that the records were "true and accurate copies of treatment records from Dr. Evans, and that they "were not available when the administrative record [was] certified on June 18, 2008[.]" (Doc. # 21).  Counsel for the Commissioner represents that the supplemental transcript includes "all of the treatment notes in the administrative record that were not previously included in the administrative transcript[,]" and states that agency counsel obtained the records in the supplemental filing directly from plaintiff's attorney on August 18 and 19, 2010.  (Commissioner's Supplemental Brief, Doc. # 22, p. 1).[7]

The Commissioner has not filed or identified the medical records submitted by plaintiff to the Appeals Council on October 22, 2007 – presumably not the same records of treatment by Dr. Evans in January and May 2005 which were already before the ALJ – nor has the Commissioner explained why that "additional medical evidence" cannot be provided.[8]  The Commissioner's decision is due to be reversed based on the ALJ's decision and the record presently before the court. However, the court anticipates that the

---

[7] The records attached to the supplemental certification include three copies of the May 4, 2005 treatment note (See R. 273-74, 276-77, 281-82) and treatment notes for January 5th and January 18, 2005.

[8] The Appeals Council's Exhibit List and its order making additional exhibits part of the record both refer to Exhibit AC-1 as "FAX from counsel dated October 22, 2007, with attached contentions and *additional medical evidence*[.]" (R. 1E, 4)(emphasis added). The "additional medical evidence" is not further identified. Although the record includes an October 22, 2007 request for review of hearing decision, there are no medical records or "contentions" associated with that document. (R. 9). The court has found no medical records in the transcript other than those which were before the ALJ.

9

Commissioner will take the necessary steps, on remand, to ensure that any further proceedings in this action are based on consideration of the entire record, including all of the medical evidence submitted by the plaintiff.[9]

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be REVERSED and this action REMANDED for further proceedings.

Done, this 18th day of October, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[9] It is not apparent whether the Appeals Council's decision to deny review was based on its evaluation of an incomplete record.